DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Civil Action No. 1999-196 |
| CARL F. CHRISTOPHER and CEDELLE ) | |
| CHRISTOPHER, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**Attorneys:**
**Angela Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
   *For the Plaintiff*

**Martial A. Webster, Esq.,**
St. Croix, U.S.V.I.
   *For the Defendants*


## MEMORANDUM OPINION

**Lewis, District Judge**

THIS MATTER comes before the Court on the Plaintiff United States of America's Motion for Summary Judgment, which was filed on September 20, 2011. (Dkt. No. 54). By this Motion, the Government seeks summary judgment on its breach of contract and foreclosure causes of action. Defendants oppose the Government's Motion on the grounds that there is a material issue of fact as to whether their debt obligation to the Government was discharged as part of a class action settlement. For the reasons discussed below, the Court finds that there are no material issues of fact, and therefore will grant summary judgment in favor of the Government.

I.   **BACKGROUND**

A.  **Procedural History**

On December 1, 1999, the Government filed a complaint against Defendants Carl F. Christopher and Cedelle Christopher alleging breach of a promissory note and foreclosure causes of action. (Dkt. No. 1).  On April 14, 2000, the Court stayed the case because Defendants were class members in *Chiang v. Schafer*, a class action brought by Virgin Islanders alleging race, gender and national origin discrimination against the Secretary of Agriculture in connection with loan applications. (Dkt. No. 6).  That class action was ultimately dismissed (*see Chiang v. Schafer*, 2008 WL 3925260, at *2 (D.V.I. Aug. 20, 2008)) and the Court lifted the stay on September 2, 2008, (Dkt. No. 13).  On November 17, 2008, the case was again stayed by the Court pending resolution of the appeal in *Chiang v. Schafer*. (Dkt. No. 24).  The appeal was denied and the Court lifted the stay on February 4, 2010.  (Dkt. No. 26).

On September 20, 2011, the Government filed the instant Motion for Summary Judgment.  (Dkt. No. 54).  Defendants filed their opposition to the Motion for Summary Judgment on November 10, 2011, (Dkt. No. 65),[1] and the Government filed a reply memorandum on November 23, 2011, (Dkt. No. 66).

B.  **Facts**

On May 22, 1981, the United States, acting through the United States Department of Agriculture, Farmers Home Administration, loaned Defendants Carl F. Christopher and Cedelle Christopher Thirty-Seven Thousand Four Hundred Fifty dollars ($37,450.00), pursuant to Title V

---

[1] On October 27, 2011, Defendants filed an untimely Motion for Extension of Time to respond to the Government's Motion for Summary Judgment, (Dkt. No. 57), which was opposed by the Government.  (Dkt. No. 58).  The Court granted Defendant's Motion for Extension of Time, *nunc pro tunc*, on June 4, 2012. (Dkt. No. 69).

of the Housing Act of 1949, 42 U.S.C. § 1471 *et seq.*[2] Defendants executed and delivered to the United States a promissory note (the "Note") in which the Defendants promised to pay the United States of America the principal sum of $37,450.00, together with interest at the rate of 13.0% per annum. (Note, Dkt. No. 55-1). The Note called for monthly payments of $414.00 over thirty-three (33) years. *Id.*

On May 22, 1981, the Defendants also executed and delivered to the United States a real estate mortgage (the "Mortgage") covering certain land and premises described as Parcel 1, Matr. 13AA, Estate Sprat Hall, Northside Quarter A, comprising 44.48 U.S. acres, more or less, as the same is shown and described in P.W.D. Map No. 11, dated August 4, 1938. The Mortgage secured payment of the indebtedness owed by the Defendants to the United States under the Note. The Mortgage was recorded at the Office of the Recorder of Deeds for St. Croix on May 22, 1981 at Official Photocopy 295-M, page 20, Doc. No. 1630/81. (Mortgage, Dkt. No. 55-2).[3]

On May 22, 1981, the Defendants also entered into a Subsidy Repayment Agreement with the United States. (Subsidy Repayment Agreement, Dkt. No. 55-3). The Subsidy Repayment Agreement provides the terms under which Defendants are required to repay the "interest credits or Homeownership Assistance program subsidy" for which Defendants were

---

[2]    Title V of the Housing Act of 1949, 42 U.S.C. § 1471 *et seq.*, authorizes the Department of Agriculture to "extend financial and technical assistance through the Farmers Home Administration (FmHA) to low-income rural residents who seek to obtain housing." *Block v. Neal*, 460 U.S. 289, 290 (1983). The United States Department of Agriculture, Rural Development, is the successor agency to the Farmers Home Administration. (*See* Dkt. No. 55-6).

[3]    On May 3, 1989, for reasons not relevant to this Motion, the United States of America released a portion of the Property – nearly thirty-five (35) of the original forty-four (44) acres – from the May 22, 1981 Mortgage, leaving "the 7.25 Acres now identified as Plot 333 Sprat Hall, previously identified as part of Parcel #7 Matr. 13AA identified." (Partial Release, Dkt. No. 55-2).

eligible as part of the loan under the Housing Act of 1949. Under the Subsidy Repayment Agreement, Defendants are responsible for repaying the interest credits or Homeownership Assistance program subsidy upon foreclosure of the Mortgage. *Id.* at ¶¶ 4-6.

On May 22, 1990, the Defendants and the United States entered into a Reamortization and/or Deferral Agreement for the then unpaid principal balance of $36,984.36 on the May 22, 1981 Note. (Reamortization and/or Deferral Agreement, Dkt. No. 55-4).

Defendants stopped paying on the Note and Reamortization and/or Deferral Agreement and fell into default on August 19, 1997. (Aff. of Georgetta Graham at ¶ 3, Dkt. No. 55-5). According to the United States, as of September 7, 2011, Defendants owed the United States $38,736.71 in principal; $82,890.19 in unpaid interest; $5,400 in subsidy recapture; $36,190.87 in fees and costs (including interest on unpaid fees), for a total amount of $163,217.77, with interest accruing at $13.80 per day until the date of judgment. (Aff. of Georgetta Graham at ¶¶ 6-7, Dkt. No. 55-5; September 7, 2011 Certificate of Indebtedness, Dkt. No. 55-6).

As it relates to Defendants' asserted defense to this action, on April 14, 1999, the District Court for the District of Columbia issued a Consent Decree in a class action entitled *Pigford v. Glickman, et al*. to settle claims of discriminatory treatment against African-American farmers regarding the issuance of certain loans by the United States Department of Agriculture. *See Pigford v. Glickman*, 185 F.R.D. 82, 86 (D.D.C. 1999).[4] As relevant here, the Consent Decree provided that African-American farmers who could prove that they applied for and were denied a farm program loan on the basis of race between January 1, 1981 and December 31, 1996 would

---

[4] Included with the Government's reply memorandum are the *Pigford* Consent Decree (Dkt. No. 66-1), the February 7, 2001 Stipulation and Order amending the Consent Decree (Dkt. No. 66-3), documents regarding Defendant Carl Christopher's claims to the Adjudicator established by the Consent Decree (Dkt No. 66-4), and the Adjudicator's Statement of Decision regarding Christopher's claims (Dkt. No. 66-2).

receive: (1) a cash payment of $50,000; (2) forgiveness of all debt owed to the USDA incurred under or affected by the program that formed the basis of the claim; (3) a tax payment directly to the IRS in the amount of 25% of the total debt forgiveness and cash payment; (4) immediate termination of any foreclosure proceedings that USDA initiated in connection with the loan(s) at issue in the claim; and (5) injunctive relief including one-time priority loan consideration and technical assistance. (Consent Decree ¶ 9, Dkt. No. 66-1).  The Consent Decree created a resolution mechanism whereby a class member could file a claim with an "adjudicator" who, after giving the Government time to respond, would then make a recommendation with respect to whether the claim should be approved or indicate its inability to make a recommendation. *Id*.

On February 7, 2001, the district court entered a "Stipulation and Order," signed by counsel for the Government and Pigford, clarifying several provisions of the Consent Decree, including, *inter alia*, that the debt relief afforded by Paragraph 9 of the Consent Decree

> [S]hall not include: (a) debts that were incurred under FSA programs other than those as to which a specific finding of discrimination was made by the Adjudicator or Arbitrator with respect to the class member (e.g. the Operating Loan Program [OL Program], the Farm Ownership loan program [FO Program], the Emergency Loan program [EM Program], etc.); (b) debts that were incurred by the class member prior to the date of the first event upon which the Adjudicator's or Arbitrator's finding of discrimination is based . . . .

(Stipulation and Order at 3, Dkt. No. 66-3).

On October 9, 1999, Defendant Carl Christopher, through counsel, transmitted his claims package to the Adjudicator. (*See* Dkt. No. 66-4).  On November 6, 2002, the Adjudicator issued its "Statement of Decision" on Defendant's claims. (*See* Dkt. No. 66-2). The Statement of Decision reflects that Defendant Carl Christopher had made four separate claims of discriminatory conduct to the Adjudicator: 1) in 1981, he was denied a "non-farm enterprise loan;" 2) in 1989, Defendant was denied an emergency loan to repair damage caused by

Hurricane Hugo; 3) in 1989, Defendant attempted to refinance a "1979 home ownership loan of $130,000 that carries a high interest rate;" and 4) in 1995, Defendant was denied an emergency loan to repair damage caused by another hurricane. *Id.* at 2.

The Adjudicator "[a]pproved in part and denied in part" Defendant Carl Christopher's claims. It found that Defendant "was subject to discriminatory treatment by USDA in connection with the denial of an emergency loan in 1989 . . . . As required by the Consent Decree, claimant shall receive a $50,000 cash payment" and "shall be relieved of any USDA emergency loan debt between January 1, 1987 and December 31, 1996. The claim asserted with respect to the non-farm enterprise loan is not covered by the Consent Decree." *Id*. at 2-3. The Statement of Decision provided that Defendant had 120 days to contest the decision before it would become final. *Id*. at 4. The record does not reflect that Defendant contested the Adjudicator's decision and Defendant does not claim that he did.

## II. DISCUSSION

### A. Applicable Legal Principles

#### 1. Summary Judgment Standard

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Nicini v. Morra*, 212 F.3d 798, 805-806 (3d Cir. 2000) (en banc); *see also* Fed. R. Civ. P. 56(a). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). A factual dispute is deemed genuine if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In reviewing the evidence, the court may not weigh the evidence and must give the nonmoving party the benefit of all reasonable inferences. *Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citations omitted); *Bray v. Marriott Hotels*, 110 F.3d 986, 989 (3d Cir. 1997).

### 2. Breach of Contract and Foreclosure

To succeed on a breach of contract claim under Virgin Islands law, a plaintiff must prove four elements: "(1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages." *Arlington Funding Services, Inc. v. Geigel*, 51 V.I. 118, 135 (V.I. 2009) (citing *Galt Capital, LLP v. Seykota*, 2007 WL 2126287, at *2 (D.V.I. July 18, 2007); *see also Elbrecht v. Carambola Partners, LLC,* 2010 WL 2813614, at *3 (D.V.I. July 16, 2010) (citing *Arlington Funding Services*); Restatement (Second) of Contracts §§ 235, 237, 240 (1965) (defining breach of contract).

To prevail on a foreclosure claim, the plaintiff must show: (1) the debtor executed a promissory note and mortgage; (2) the debtor is in default under the terms of the note and mortgage; and (3) the lender is authorized to foreclose on the property mortgaged as security for the note. *Thompson v. Florida Wood Treaters, Inc.,* 2009 WL 4730784, at *3 (D.V.I. Dec. 6, 2009) (citing *National Union Fire Ins. Co. v. Saunders*, 899 F. Supp. 452, 455 (C.D. Cal. 1993)); *see also* Am. Jur. 2d Mortgages § 633 (2008) (foreclosure requires valid mortgage, default on part of mortgagor, and foreclosure in compliance with terms of contract).

### B. Analysis

#### 1. The Government's Evidence

The Government has provided evidence to support all the elements as to both of its causes of action. The Note and Mortgage are evidence of an agreement between the parties whereby Defendants borrowed $37,450.00 from the Government in exchange for their agreement to 1) repay the loan with interest at 13% per annum and 2) secure repayment of the loan by mortgaging the Property. (*See* Note and Mortgage, Dkt Nos. 55-1 and 55-2). In their opposition memorandum, Defendants acknowledge that they signed the Note and Mortgage. (Defs.' Opp. at 1). The Mortgage provides that if Defendants default under their obligations contained in the Mortgage or in "any obligation . . . secured by this instrument," the Government may declare the entire amount unpaid immediately due and "enforce any and all other rights and remedies . . . provided by present or future law" including a "foreclosure sale." (Mortgage at 3, Dkt. No. 55-2).

Further, the Government has provided evidence that Defendants are in default by failing to make payments due under the Note and Mortgage. "[B]ased on personal knowledge of the documents executed by Defendants Carl Christopher and Cedelle Christopher . . . Carl Christopher and Cedelle Christopher defaulted on the promissory note, mortgage and re-amortization and/or deferral agreements" on August 19, 1997. (Aff. of Georgetta Graham at ¶¶ 1-3, Dkt. No. 55-5). Defendants acknowledge that on "August 19, 1997, Plaintiff accelerated the loan due to failure to make timely payments and cure the arrearage." (Defs.' Opp. at 2).

Finally, the Government has demonstrated that it has been damaged in the amount of $163,217.77, as of September 7, 2011. (Aff. of Georgetta Graham at ¶ 6, Dkt. No. 55-5; September 7, 2011 Certificate of Indebtedness, Dkt. No. 55-6).

The Court finds that this evidence is sufficient to shift the burden to Defendants to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in [Defendants'] favor" regarding the Government's contract and foreclosure causes of action. *Ridgewood Bd. of Educ.*, 172 F.3d at 252.

2. Defendants' Arguments

In their Opposition, Defendants argue that there is a genuine issue of fact "as to whether they were fairly treated and serviced by Plaintiff and the amount Defendants owe on the loan, if any." (Defs.' Opp. at 4).[5] In support of this contention, Defendants proffer the affidavit of Defendant Carl Christopher who avers that Defendants had four loans with the Farmers Home Administration: 1) in 1978, a $130,000 loan to purchase forty-four (44) acres of land with a house in need of substantial repair; 2) in 1980, a $63,063.02 loan to acquire equipment; 3) in 1980, a $20,000 loan for soil conversation and irrigation; and 4) a $37,450 loan "to repair the structure of the property." (Aff. of Carl Christopher ¶ 2, Dkt No. 65-1).[6] In 1989, Defendants had to sell a significant portion of the forty-four (44) acres of land "to avoid foreclosure" and "to salvage the family residence." *Id*. at ¶ 4. A large portion of the property was sold to the "Bolt Family Trust," who, with the assent of the Government, assumed three of the four loans. *Id*. at ¶

---

[5] Defendants' opposition fails to specifically address the Government's Statement of Facts and fails to cite to "the precise portions of the record" supporting their contentions that there are material issues of fact as required by Local Rule of Civil Procedure 56.1(b). In addition to the fact that this non-compliance with the Local Rules of Civil Procedure "may result in a finding that the asserted facts are not disputed for the purposes of summary judgment," (LRCi. 56.1(d)), it hinders the Court's ability to evaluate Defendants' arguments.

[6] Although Defendant Carl Christopher does not indicate the date of the $37,450 loan, documents provided by the Government indicate that the loan at issue in this suit was in the amount of $37,450 and was issued on May 22, 1981. (*See* Note, Dkt. No. 55-1). The $37,450 loan referred to by Defendant Carl Christopher in paragraph 2 of his affidavit appears to be the loan that is the subject of this lawsuit. *Id*.

5. Defendants remained liable for those loans if the Bolt Family Trust defaulted on them. *Id*. at ¶ 6.

Defendant Carl Christopher further contends that Defendant made payments on their debt until October 1995 following Hurricane Marilyn, and that from October 26, 1995 through June 13, 1997, "the loan was in a moratorium/deferred payment status due to financial hardship and other damages caused by Hurricane Marilyn." *Id*. at ¶ 8. Defendant states that on August 19, 1997, Plaintiff accelerated the loan due to failure to make timely payments, (*id*. at ¶ 9), and commenced a foreclosure action against Defendants on December 1, 1999 (*id*. at ¶ 11).

In his affidavit Defendant Carl Christopher states that in 2000, Defendants became class members in *Pigford v. Glickham*. The case was settled and "based on the settlement, Defendants were of the opinion that the debt had been relieved." *Id*. at ¶ 12. Defendants also "contest the extremely high interest rate on the loan, and the outstanding balance on the loan." *Id*. at ¶ 13. Defendants further claim that they thought they would have access to programs to "assist and advise" them regarding their loans and that they "always questioned . . . the extremely high interest rate to [a] limited resource family." *Id*. Defendant states that Plaintiff has "made no effort to assist [them] in refinancing or restructuring the loan to lower the interest rate to a favorable and manageable debt." *Id*. Defendants conclude that they "do not believe that they are indebted to Plaintiff in the amounts alleged and believe than an audit of Defendant's loan accounts will reveal this fact." *Id.* at ¶ 14.

Defendant Carl Christopher's affidavit does not create a genuine issue of material fact as to any elements of the Government's causes of action. The Government has provided a declaration and Certificate of Indebtedness detailing the amounts that Defendants owe. Defendants' "belief" that they do not owe what the Government claims cannot substitute for

10

evidence showing a material question of fact as to the amount owed. *Lexington Ins. Co. v. Western Pennsylvania Hosp.*, 423 F.3d 318, 332 (3d Cir. 2005) (unsubstantiated "belief" by plaintiff that she provided notice of medical malpractice claim to insurer during the contractual reporting period did not create genuine issue of fact as to whether claim was timely because it was "too speculative"); *Schoonejongen v. Curtiss-Wright Corporation*, 143 F.3d 120, 130 (3d Cir.1998) ("a nonmoving party . . . cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit [as to a material fact].") (citations omitted); *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985) ("Although the burden of proof rests initially with the party moving for summary judgment, when a motion is made and supported, the nonmoving party must produce specific facts showing that there is a genuine issue for trial, rather than resting upon the assertions of pleading; a genuine issue means that the evidence must create a fair doubt, and wholly speculative assertions will not suffice."); *see also Langley v. Merck & Co., Inc.*, 186 Fed. Appx. 258, 260 (unpublished) (3d Cir. 2006) ("Langley, however, cannot create a genuine issue of material fact by simply testifying as to her beliefs concerning the relevant facts . . . without showing that her beliefs are based on either personal knowledge or some other evidence."); *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.").

Similarly, Defendants' claim that they have not received documents "showing the total amounts that were paid for the duration of those loans, including principal and interest" (*see* Christopher Aff. at 7, Dkt. No. 65-1) does not create a genuine issue of material fact sufficient to defeat the Government's Motion for Summary Judgment. As a preliminary matter, "those loans" referred to in paragraph 7 of Carl Christopher's affidavit appear to be loans assumed by the Bolt

Family Trust.[7] The loans assumed by the Bolt Family Trust, which were issued in 1978 and 1980, are not the subject of this lawsuit, and Defendants do not explain how documents regarding payments on those loans are material to this case. Moreover, the Government *has* provided information to the Defendants (and the Court) regarding how much Defendants *owe* on the loan at issue *in this case*. (*See* Aff. of Georgetta Graham at ¶ 6, Dkt. No. 55-5; Certificate of Indebtedness, Dkt. No. 66-6; *see also* September 22, 2010 Certificate of Indebtedness and Payoff Information Sheet, Dkt. No. 49-6).[8] As discussed above, Defendants have not proffered any challenge to the amount claimed to be due by the Government on the loan at issue here sufficient to create a genuine issue of material fact.

Defendants also contend that there is a genuine issue of material fact as to whether their debt was discharged in resolution of their claim in the *Pigford* class action. They ask the Court

---

[7] Defendant Carl Christopher states that three of the four loans Defendants had with the Farmers Home Administration were assumed by the Bolt Family Trust in 1989 "with the approval of [the United States]." (Aff. of Carl Christopher at ¶¶ 2 & 5, Dkt. No. 65-1). On May 22, 1990, the United States and Defendants entered into a reamortization agreement of the May 22, 1981 Note, which is the subject of this lawsuit. (Reamortization and/or Deferral Agreement, Dkt. No. 55-4). The Bolt Family Trust was not a party to that reamortization agreement (*id*.), and Defendants have not provided any evidence that the May 22, 1981 Note was assumed by the Bolt Family Trust.

[8] Defendant Carl Christopher's averment in paragraph 10 of his affidavit ("The Bolt Family Trust had stop [sic] paying Defendants on the land he had purchased from Defendants. Defendants did not receive a notice from Plaintiff that the Bolt Family Trust had stop [sic] paying on the loans."), appears by its terms, once again, to relate to the loans assumed by the Bolt Family Trust, which are not at issue here. The Government has produced evidence that it provided Defendants with notice of acceleration regarding the loan at issue in this case. (*See* September 7, 2011 Certificate of Indebtedness) ("Rural Development has complied with 7 CFR 3550. After the acceleration notice was sent, the borrower did not request a formal or informal meeting with the agency regarding acceleration of the debt and institution of foreclosure proceedings."). Defendants have not challenged receiving notice regarding the loan at issue in this case and have therefore failed to create a genuine issue of material fact regarding notice of acceleration of the Note. *Ridgewood Bd. of Educ.*, 172 F.3d at 252.

to take judicial notice of the *Pigford* class action and of the "fact that debt relief and termination of foreclosure actions were granted in the *Pigford* class action." (Defs.' Opp. at 5).

As discussed above, in the Statement of Decision, the Adjudicator awarded Defendant Carl Christopher $50,000 and held that Defendant "shall be relieved of any USDA emergency loan debt between January 1, 1987 and December 31, 1996." (Statement of Decision at 2-3, Dkt. No. 66-2). The Government contends that because the debt in this case is not an "emergency loan debt between January 1, 1987 and December 31, 1996," it was therefore not discharged by the Adjudicator or by operation of the Consent Decree.

Defendant neither provides nor identifies any evidence that the debt at issue in this case was an "emergency loan debt" between 1987 and 1996. To the contrary, the Note indicates that the loan was a "RH" loan, which, according to the Note, means "Rural Housing," transacted in 1981. (*See* Note, Dkt. No. 55-1). Accordingly, Defendants have not created a genuine issue of fact regarding whether the debt at issue was discharged by the *Pigford* class action.

Defendants press further and argue that the Consent Decree itself relieves Defendants of their debt obligations under the Note and Mortgage. The Consent Decree provides in pertinent part:

> In any case in which the adjudicator decides in a class member's favor, the following relief shall be provided to the class member:
>
> (A) USDA shall discharge all of the class member's outstanding debt to the USDA that was incurred under, or affected by, the programs that was/were the subject of the [Equal Credit Opportunity Act] claim(s) resolved in the class member's favor by the adjudicator. The discharge of such outstanding debt shall not adversely affect the claimant's eligibility for future participation in any USDA loan or loan servicing program;
>
> (B) The class member shall receive a cash payment of $50,000 that shall be paid from the fund described in 31 U.S.C. § 1304 ("the Judgment Fund");

>           \*\*\*
>     (E) The immediate termination of any foreclosure proceedings that USDA has initiated against any of the class member's real property in connection with the ECOA claim(s) resolved in the class member's favor by the adjudicator; and the return of any USDA inventory property that formerly was owned by the class member but which was foreclosed in connection with the ECOA claim(s) resolved in the class member's favor by the adjudicator.

(Consent Decree at ¶ 9, Dkt. No. 66-1).

The Statement of Decision provides that Defendant Carl Christopher "has established by substantial evidence that he was subject to discriminatory treatment by USDA in connection with the denial of an emergency loan *in 1989* and failure to provide appropriate loan services in that year." (Statement of Decision at 2, Dkt. No. 66-2) (emphasis added). The Statement of Decision does not indicate that Defendant asserted any sort of discriminatory conduct regarding his May 22, 1981 Rural Home Loan—the loan at issue in this case—or that he was found to be successful on a discrimination claim regarding that loan. Accordingly, the debt relief and foreclosure termination provisions in the Consent Decree do not apply to the loan at issue in this case. Defendants' debt obligation was not relieved by virtue of Defendant Carl Christopher's participation in the *Pigford* class action settlement and Defendants' "belief" that it was relieved (*see* Christopher Aff. ¶ 12, Dkt. No. 65-1), does not create a genuine issue of material fact. *Lexington Ins. Co.*, 423 F.3d at 332.[9]

---

[9] Defendants also contend that they were not represented by counsel in the *Pigford* matter. (Opp. Br. at 5). Defendants do not explain how that fact, if true, is material to summary judgment. In any event, the claim form materials produced by the Government demonstrate that Defendants were represented and assisted by counsel during the claims process. (*See* Dkt. No. 66-4).

### III. CONCLUSION

For the reasons discussed above, the Court finds that there are no genuine issues of material fact and grants the Government's Motion for Summary Judgment. An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: June 8, 2012

_____/s/_____
WILMA A. LEWIS
District Judge